22 F.3d 1242
 62 USLW 2661, 25 Bankr.Ct.Dec. 904, Bankr.
L. Rep. P 75,822
 Anders S. BILLING; Diann E. Billing
v.
RAVIN, GREENBERG & ZACKIN, P.A.; Ravin, Greenberg & Marks,
P.A.; and Howard Greenberg,
Defendants/Third-Party Plaintiffs,
v.
ROSS & HARDIES; Helen Davis Chaitman, Third-Party Defendants,
Ravin, Greenberg & Zackin, P.A.; Ravin, Greenberg & Marks,
P.A.; and Howard S. Greenberg, Appellants.
 No. 93-5289.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 3, 1993.
Decided April 20, 1994.
Sur Petition for Rehearing May 23, 1994.
 
 S.M. Chris Franzblau (argued), Kenneth K. Lehn, Franzblau, Dratch & Friedman, Roseland, NJ, for appellants.
 Helen Davis Chaitman (argued), Jody B. Keltz, Ross & Hardies, Somerset, NJ, for appellees.
 Before: SLOVITER, Chief Judge, STAPLETON, Circuit Judge, and RESTANI, Court of International Trade Judge.*
 OPINION OF THE COURT
 RESTANI, Judge:
 
 
 1
 This is an interlocutory appeal from a judgment of the United States District Court for the District of New Jersey, denying defendant-appellants' motion for a referral to the bankruptcy court, dismissal, abstention, or stay. Billing v. Ravin, Greenberg & Zackin, P.A., 150 B.R. 563, 570 (D.N.J.1993). Defendant-appellants Ravin, Greenberg & Zackin, et al., ("Ravin, Greenberg") acted as bankruptcy counsel on behalf of plaintiff-appellees Anders S. Billing and Diann E. Billing ("the debtors"). After Ravin, Greenberg filed an application for fees with the bankruptcy court, the debtors objected on the ground that the attorneys had engaged in legal malpractice.
 
 
 2
 The debtors filed a separate malpractice action in district court, invoking their right to a jury trial under the Seventh Amendment to the U.S. Constitution. The district court agreed that the debtors were entitled to trial by jury and held that bankruptcy courts did not have the authority to conduct jury trials. Id. at 567-68, 570. Therefore, it denied Ravin, Greenberg's motion for referral of the malpractice action to the bankruptcy court, dismissal, abstention or stay. Id. at 570. Ravin, Greenberg now appeals the district court's denial of its motion.
 
 I.
 
 3
 In June 1989, the debtors filed several voluntary petitions under Chapter 11 of the bankruptcy code. Billing, 150 B.R. at 564. The debtors retained Ravin, Greenberg as bankruptcy counsel pursuant to an order of the bankruptcy court. Id. The debtors' reorganization plan, which the bankruptcy court approved on August 10, 1992, provided for the payment of attorney's fees only in such amounts as are allowed by the bankruptcy court in accordance with statutory standards. Id.; Joint Modified Plan of Reorganization, art. 2, Joint Appendix at 22.
 
 
 4
 After obtaining approval of the reorganization plan, Ravin, Greenberg presented to the bankruptcy court an application for attorney's fees in the amount of $199,043.50 plus $19,978.20 in expenses. The debtors subsequently sued the attorneys in the United States District Court for the District of New Jersey on the grounds of legal malpractice, requesting trial by jury. The complaint was filed on October 16, 1992, and entered on October 20. On or about October 16, the debtors submitted their objection to fees to the bankruptcy court, alleging that Ravin, Greenberg spent excessive amounts of time in meetings, reviewing the pleadings, and reviewing the file. Billing, 150 B.R. at 564. The debtors' primary objection, however, rested on their allegations of legal malpractice. Id. They strongly protested the award of attorney's fees while their malpractice complaint against Ravin, Greenberg was pending in district court.
 
 
 5
 On November 23, 1992, Ravin, Greenberg gave notice of its motion to dismiss the debtors' malpractice action, or, in the alternative, to stay the proceedings until the bankruptcy court had resolved the fee dispute. The district court issued an opinion denying the motions on January 27, 1993. The court held that: 1) the proceeding is a core proceeding under the meaning of the bankruptcy code; 2) the debtors' claims are legal and thus give rise to a right to jury trial; and 3) bankruptcy courts cannot conduct jury trials, and therefore the dispute must be resolved in district court. Id. at 567-570. The district court denied Ravin, Greenberg's motion for reconsideration in light of the recently decided case of Travellers Int'l AG. v. Robinson, 982 F.2d 96 (3d Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1946, 123 L.Ed.2d 651 (1993). Billing v. Ravin, Greenberg & Zackin, P.A., Civ. Action No. 92-4278 (D.N.J. Feb. 23, 1993) (denial of motion for reconsideration).
 
 
 6
 On March 25, 1993, the district judge granted Ravin, Greenberg's motion to certify the following questions for interlocutory appeal: 1) whether the debtors' action for malpractice constitutes a core proceeding; 2) whether a bankruptcy court is empowered to conduct a jury trial in a core proceeding; and 3) whether the debtors "waived" their right to a trial by jury by submitting to the equitable jurisdiction of the bankruptcy court. Billing v. Ravin, Greenberg & Zackin, P.A., Civ. Action No. 92-4278, at 2 (D.N.J. Mar. 25, 1993) (order certifying questions for interlocutory appeal and denying stay pending appeal).
 
 II.
 
 7
 The district court took subject matter jurisdiction over this case pursuant to 28 U.S.C. Sec. 1334 (1988). Billing v. Ravin, Greenberg & Zackin, P.A., 150 B.R. 563, 564 (D.N.J.1993). Section 1334 grants jurisdiction to the district courts over cases under title 11 of the United States Code, arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. Sec. 1334(a), (b). The district court determined that the debtors' malpractice claims arose under title 11 because of the claims' connection with the debtors' bankruptcy petitions. See Billing, 150 B.R. at 564. We find that jurisdiction in the district court was proper under Sec. 1334.
 
 
 8
 We have appellate jurisdiction pursuant to 28 U.S.C. Sec. 1292(b) (1988). An appellate court may permit an interlocutory appeal if the district court certifies that its order involves a controlling question of law as to which there exists substantial controversy and that an immediate appeal will advance the termination of the litigation. Id. On March 25, 1993, the district court issued an order certifying this case for interlocutory appeal. This court granted permission to appeal on May 12, 1993. Thus, we have appellate jurisdiction.
 
 
 9
 Because this case centers on issues of law rather than fact, the standard of review is plenary. In re Data Access Sys. Sec. Litig., 843 F.2d 1537, 1539 (3d Cir.), cert. denied, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). Although the scope of review on an interlocutory appeal is generally constrained to the questions certified for review by the district court, we may consider any grounds justifying reversal. Id.
 
 III.
 
 10
 As a preliminary matter, we note that the parties do not contest the district court's holding that the debtors' malpractice claim constitutes a core proceeding under the meaning of the bankruptcy code.[1] Therefore, the first question certified for interlocutory appeal will not be addressed by this court. The second question, whether bankruptcy courts have the power to conduct jury trials, is not reached, as we find in answer to the third question that the debtors have no right to a jury trial in this instance.
 
 A.
 
 11
 The Seventh Amendment provides, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The Supreme Court interprets "suits at common law" to mean cases involving legal rights; no jury right attaches to equitable claims. Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989). In determining whether a claim is equitable or legal,
 
 
 12
 [f]irst, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.
 
 
 13
 Id. at 42, 109 S.Ct. at 2790 (citations omitted). An action for money damages based on a breach of contract is traditionally a legal claim. See Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477, 82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962). Actions sounding in tort "for damages to a person or property" are also generally considered to be actions at law. See Ross v. Bernhard, 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970).
 
 
 14
 One bankruptcy court decision has directly addressed the issue of whether a claim for legal malpractice of bankruptcy counsel satisfies the first two prongs of the Granfinanciera test. The court stated:
 
 
 15
 [g]enerally, negligence which gives rise to legal malpractice is based upon the attorney's breach of his duty of care. The essence of such an action is in tort.
 
 
 16
 In re SPI Communications & Mktg., Inc., 112 B.R. 507, 512 (Bankr.N.D.N.Y.1990). The bankruptcy court determined that the malpractice claim sounded in law rather than equity and that money damages for malpractice constituted a legal remedy. See id. Without discussing the third prong of Granfinanciera or the possible limitations of Granfinanciera implicit in other Supreme Court precedent, the bankruptcy court concluded that the attorney had a right to jury trial on the malpractice claim against him. Id.
 
 
 17
 The first two prongs of the Granfinanciera test do not provide a complete answer, however. Inquiry into the third prong of the test may reveal exceptions to the rule. In the third prong, the Supreme Court discussed whether Congress had permissibly assigned to non-Article III tribunals the adjudication of disputes arising in or related to bankruptcy proceedings. Granfinanciera, 492 U.S. at 42, 109 S.Ct. at 2790. The Court determined that Congress may assign disputes involving "public rights" to a tribunal that does not use a jury as a factfinder without violating the Seventh Amendment. Id. at 51, 109 S.Ct. at 2795.
 
 
 18
 No right to trial by jury exists in cases "where the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights. Wholly private tort, contract, and property cases, as well as a vast range of other cases, are not at all implicated." Id. (quoting Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n, 430 U.S. 442, 458, 97 S.Ct. 1261, 1270, 51 L.Ed.2d 464 (1977)). The category of public rights may include seemingly private rights, if they are closely integrated into a public regulatory scheme assigned to an administrative agency. Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 593-94, 105 S.Ct. 3325, 3339-40, 87 L.Ed.2d 409 (1985); Beard v. Braunstein, 914 F.2d 434, 441 (3d Cir.1990).
 
 
 19
 Whereas the argument is made that the restructuring of debtor-creditor relations in bankruptcy may constitute a public right,[2] the right of a debtor to recover contract damages to augment the estate is private. Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 71-72, 102 S.Ct. 2858, 2871-72, 73 L.Ed.2d 598 (1982). The right of a trustee of the debtor's estate to reclaim a fraudulent conveyance made in anticipation of bankruptcy also implicates a private rather than public cause of action. Granfinanciera, 492 U.S. at 55, 109 S.Ct. at 2797.[3] A debtor's action to recover damages for legal malpractice, arising from an attorney's tortious negligence, is likewise a private rather than a public right, and thus ordinarily would implicate a right to jury trial.
 
 
 20
 In support of its argument to the contrary, Ravin, Greenberg relies in particular on In re Brenner, 119 B.R. 495 (Bankr.E.D.Pa.1990). Brenner involved claims by a successor bankruptcy trustee against the predecessor trustee and his counsel for breach of fiduciary duty. Id. at 495. The bankruptcy court found that actions between trustees were generally founded in equity, and that even if monetary relief was sought, the remedy would take the equitable form of an accounting. Id. at 497. Therefore, it determined that the first two prongs of the Granfinanciera test were not satisfied. Id. at 496-97. The court stated further that the action involved a trustee engaged in "the 'public' business of the administration of the Debtors' bankruptcy case." Id. at 497. The court distinguished SPI on the ground that SPI "targeted alleged wrongful acts of the respective debtors' counsel." Id.
 
 
 21
 We need not go so far as the bankruptcy court appeared to do in Brenner. That is, we do not find that every matter involving the administration of the debtor's bankruptcy case evokes public rights. Rather, legal claims that may involve private rights nonetheless may, in certain bankruptcy contexts, be decided in equity.
 
 B.
 
 22
 The third prong of the Granfinanciera test suggests a limitation on the Seventh Amendment right to trial by jury in addition to the public rights doctrine. This restriction, less well articulated, has emerged in connection with creditors' demands for a jury trial in actions brought by the trustee in bankruptcy. Thus, a discussion of the creditor's right to a jury trial provides a necessary backdrop to our analysis of the debtor's right to a jury trial.
 
 
 23
 In addressing a creditor's Seventh Amendment rights under the modern bankruptcy code, the Granfinanciera Court examined Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), which considered the creditor's right to a jury trial under the Bankruptcy Act of 1898. Granfinanciera, 492 U.S. at 57, 109 S.Ct. at 2798. The 1898 Act forbade the allowance of a creditor's claim if the creditor had received a preferential transfer from the debtor prior to the date of bankruptcy. Katchen, 382 U.S. at 330, 86 S.Ct. at 473. The creditor in Katchen, after filing a proof of claim, invoked his Seventh Amendment right to a jury trial when the trustee objected to the claim on the ground of preference. See id. at 327-28, 86 S.Ct. at 471-72.
 
 
 24
 The Court first noted Congress' intent to render the administration of the bankruptcy estate inexpensive, efficient and prompt. Id. at 328, 86 S.Ct. at 471. Under the 1898 Act, the resolution of disputed claims was meant to occur in the context of summary proceedings conducted by the bankruptcy court rather than through the slower and more expensive proceedings at law. Id. at 329, 86 S.Ct. at 472.[4] As part of its power to allow or disallow claims, the bankruptcy court could summarily adjudicate the trustee's objections to a creditor's claim. Id. at 330, 86 S.Ct. at 473.[5] The Court in Katchen therefore concluded that
 
 
 25
 although petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, Schoenthal v. Irving Trust Co., 287 U.S. 92 [53 S.Ct. 50, 77 L.Ed. 185] [ (1932) ], when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity.
 
 
 26
 Katchen, 382 U.S. at 336, 86 S.Ct. at 476. There is no right to trial by jury where the claims allowance process is implicated, because the Bankruptcy Act "converts the creditor's legal claim into an equitable claim to a pro rata share of the res." Id.
 
 
 27
 In Schoenthal v. Irving Trust Co., the trustee of the bankrupt's estate brought a suit in equity against two individuals for the recovery of an allegedly preferential transfer. 287 U.S. at 93, 53 S.Ct. at 51. The Court stated, "[s]uits to recover preferences constitute no part of the proceedings in bankruptcy but concern controversies arising out of it." Id. at 94-95, 53 S.Ct. at 51. The Court then determined that the suit should be heard at law because the defendants, who apparently had neither counterclaimed nor filed a claim against the estate, had done nothing to indicate a willingness that the case be heard in equity. Id. at 96-97, 53 S.Ct. at 52.
 
 
 28
 Citing Schoenthal, the Supreme Court in Granfinanciera found that the Seventh Amendment applied to suits to recover fraudulent conveyances. Granfinanciera, 492 U.S. at 49-50, 56, 109 S.Ct. at 2794-95, 2797. Such suits "more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." Id. at 56, 109 S.Ct. at 2798. The Court thus held that a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by a trustee seeking to recover a fraudulent conveyance. Id.
 
 
 29
 The Granfinanciera Court saw no conflict between its holding and the Court's prior conclusion in Katchen that a person who has submitted a claim against the bankruptcy estate is not entitled to a jury trial on the trustee's preference action. See id. at 57, 109 S.Ct. at 2798. Granfinanciera made clear that the Court's decision in Katchen did not depend on the scope of the summary jurisdiction granted to the bankruptcy courts by the 1898 Act. Id.[6] Instead, Katchen turned on "the bankruptcy court's having 'actual or constructive possession' of the bankruptcy estate and its power and obligation to consider objections by the trustee in deciding whether to allow claims against the estate." Granfinanciera, 492 U.S. at 57, 109 S.Ct. at 2798 (citations omitted).
 
 
 30
 The Court interpreted Schoenthal and Katchen "as holding that, under the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate." Id. at 58, 109 S.Ct. at 2799. It clarified in a footnote that
 
 
 31
 by submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims, even though the debtor's opposing counterclaims are legal in nature and the Seventh Amendment would have entitled creditors to a jury trial had they not tendered claims against the estate.
 
 
 32
 Id. at 59 n. 14, 109 S.Ct. at 2799 n. 14.[7] The Court found that because the creditors in Granfinanciera had not filed claims against the estate, the trustee's fraudulent conveyance action did not arise as part of the "allowance and disallowance of claims," as stated in Katchen. Id. 492 U.S. at 58, 109 S.Ct. at 2799. The Court did not further define the scope of the allowance and disallowance process.
 
 
 33
 The opinion held that the creditors were entitled to a jury trial despite the fact that a fraudulent conveyance action constituted a core proceeding normally adjudicated by the bankruptcy court. Id. at 58-59, 109 S.Ct. at 2799. Although Congress had given the bankruptcy courts power to decide all "core proceedings" arising in bankruptcy, the Court refused to allow this "purely taxonomic change" to strip a cause of action of its legal nature. See id. at 60-61, 109 S.Ct. at 2800. In the Court's view, Katchen "supports the result we reach [in Granfinanciera ]; it certainly does not compel its opposite." Id. at 59, 109 S.Ct. at 2799. While this statement may not be a whole-hearted embrace of the Katchen approach, it is clearly not an overruling.
 
 
 34
 Building on Katchen and Granfinanciera, the Supreme Court decided Langenkamp v. Culp, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam). Langenkamp is the whole-hearted embrace of Katchen that Granfinanciera apparently avoided. Langenkamp seems to formulate a bright-line rule, holding that creditors who file proofs of claim against the estate are not entitled to a jury trial on matters affecting the allowance of those claims. 498 U.S. at 45, 111 S.Ct. at 331. The Court interpreted Granfinanciera as recognizing that by filing a proof of claim a creditor triggers the process of allowance and disallowance of claims, and thus submits itself to the bankruptcy court's equitable jurisdiction. Id. at 44, 111 S.Ct. at 331. A preference action against a creditor who has filed a claim becomes part of the claims-allowance process and is thus integral to the restructuring of the debtor-creditor relationship. Id. Therefore, a creditor who has filed a proof of claim is not entitled to a jury trial on a trustee's preference action. Id. at 45, 111 S.Ct. at 331.[8]
 
 
 35
 This circuit has relied on Langenkamp in holding that "the equitable jurisdiction of the bankruptcy court is exclusive when its jurisdiction has been invoked by the filing of a claim." Travellers Int'l AG. v. Robinson, 982 F.2d 96, 100 (3d Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1946, 123 L.Ed.2d 651 (1993). In Travellers, a district court had rendered judgment against Transworld Airlines, Inc. ("TWA") and in favor of Travellers in a breach of contract action decided in October 1991. Id. at 97. On November 4, TWA deposited the amount of the judgment with the clerk of the court and obtained a stay of execution pending appeal. Id.
 
 
 36
 TWA filed for bankruptcy in January 1992 and sought to recover the money judgment on the grounds that it constituted a voidable preference. Id. Travellers subsequently filed a proof of claim to the money judgment, asserting that it did not intend to waive its jury right in the pending preference action by doing so. Id. The adversary proceeding and the proof of claim were thus intimately connected, as they both asserted rights to the same property. We held that despite Travellers' intent to protect its right to jury, it submitted itself to the equitable jurisdiction of the bankruptcy court by filing the proof of claim. Id. at 100.[9]
 
 
 37
 In contrast, in Beard v. Braunstein we found that a third party does not lose its right to jury trial by filing a compulsory, post-petition counterclaim against the trustee. 914 F.2d at 442.[10] In Beard, a trustee in bankruptcy brought an adversary proceeding in the bankruptcy court against the debtor's tenant to recover rents from the use of two buildings. Id. at 435. The tenant alleged the poor condition of the premises as a defense to his failure to pay rent, and as a basis for a separate counterclaim. Id. at 442 n. 13. He did not file a proof of claim. Id. at 435.
 
 
 38
 We determined that an action for breach of lease agreements entered into pre-petition did not constitute a core proceeding. Id. at 445. We also rejected the argument that the debtor's tenant had "consented to the jurisdiction of the bankruptcy court" by filing a compulsory counterclaim. Id. at 442. The better rule, we found, is that a party does not waive objections to jurisdiction by asserting a compulsory counterclaim. Id. We therefore required that the case be decided in district court by a jury. Id. at 447.
 
 
 39
 A prior bankruptcy court opinion finding jurisdiction and no right to jury trial was distinguished on the ground that the prior case involved a core proceeding in which a creditor had filed both a proof of claim and a permissive, rather than compulsory, counterclaim. Id. at 442 (citing Baldwin-United Corp. v. Thompson, 48 B.R. 49, 54, 55 & n. 5 (Bankr.S.D.Ohio 1985)). Because the bankruptcy court in the prior case determined that the trustee's action was a core proceeding, "the trustee's claims stood on their own jurisdictional footing." Id.
 
 
 40
 In the case at bar, the application for attorney's fees and the debtors' objections likewise stand on their own jurisdictional footing. The debtors commenced the bankruptcy proceeding by filing a voluntary petition. See 11 U.S.C. Sec. 301 (1988). The debtors' counsel submitted an application for fees under a statutory provision authorizing the bankruptcy court to award reasonable compensation to bankruptcy counsel after notice and hearing. Id. Sec. 330(a) (1988).
 
 
 41
 There is no question that the bankruptcy court had core jurisdiction over this claim, whether or not the debtors filed any objections, defenses, or affirmative counterclaims. See 28 U.S.C. Sec. 157(b)(1), (2); see also supra Part III. Furthermore, by invoking Ravin, Greenberg's alleged malpractice as a defense, the debtors placed the issue squarely before the bankruptcy court for decision. Thus, the question is not whether the bankruptcy court had jurisdiction over the parties and their dispute, but whether the bankruptcy court had the power to decide the proceedings in equity.
 
 C.
 
 42
 It is clear that a creditor who submits a proof of claim against the bankruptcy estate has no right to a jury trial on issues raised in defense of such a claim. Langenkamp, 498 U.S. at 45, 111 S.Ct. at 331. A question still exists as to whether the petitioner in bankruptcy is without jury rights in the very same dispute. This is a question of first impression for the Third Circuit.
 
 
 43
 The Seventh Circuit in In re Hallahan, 936 F.2d 1496 (7th Cir.1991), held that a debtor who filed a voluntary petition in bankruptcy has no right to a jury trial in dischargeability proceedings brought by a creditor who has filed a proof of claim. Id. at 1505-06.[11] The court first applied the Granfinanciera test to determine whether the claim was legal or equitable, reaching the conclusion that a proceeding to determine dischargeability was equitable. Id. at 1505. It then asserted, in dicta, that even assuming a dischargeability action to be legal, the debtor had no right to a jury trial because he voluntarily submitted to the equitable jurisdiction of the bankruptcy court by filing his petition. Id.
 
 
 44
 The court reasoned that if a creditor lost its right to a jury trial by filing a proof of claim, the debtor "cannot be endowed with any stronger right." Id. In a footnote, the opinion suggested that whereas the Supreme Court in Granfinanciera shied away from the application of a waiver theory to creditors, a waiver theory might more appropriately pertain to voluntary debtors. Id. at 1505 n. 10. The court in Hallahan refused to address the knotty problem of the waiver theory as applied to involuntary debtors. Id. at 1505 n. 11.
 
 
 45
 The Fifth Circuit in In re Jensen, 946 F.2d 369, 374 (5th Cir.1991), agreed with the result in Hallahan while disagreeing with the reasoning. The court in Jensen specifically rejected the waiver theory propounded in Hallahan. Id. According to the Fifth Circuit's view, the debtor in Hallahan lost its jury right when the creditor filed its proof of claim, not when the debtor filed its voluntary petition. Id. The court stated, "[f]iling a proof of claim denied both the plaintiff and the defendant, debtor, any right to jury trial that they otherwise might have had on that claim." Id.
 
 
 46
 The question presented in Jensen was "whether a debtor effectively subjects his pre-petition claims to the bankruptcy court's equitable power when he files a petition for bankruptcy." Id. at 373. The court concluded that a debtor does not and then elaborated:
 
 
 47
 [t]he petition for bankruptcy itself has nothing to do with whether the bankruptcy court can exercise equitable jurisdiction over a debtor's pre-petition claims. Its only effect is to pass ownership and control of the claims to the estate....
 
 
 48
 Id. The Jensen court held that an unrelated state-law suit by the debtor in possession against non-creditor third parties is not part of the process of allowance and disallowance of claims. Id. at 374.[12] Therefore, the debtor retains his right to jury in that circumstance despite the filing of a voluntary petition in bankruptcy. Id.
 
 
 49
 The Second Circuit's opinion in Germain v. Connecticut Nat'l Bank, 988 F.2d 1323, 1330 (2d Cir.1993),[13] follows the reasoning of neither Hallahan nor Jensen. In Germain, the primary lender filed a proof of claim, and the trustee brought suit against it six months later for interference with the debtor's business in the post-petition period. Id. at 1325, 1326. The Second Circuit found that the tortious interference suit constituted a legal claim, giving rise to the right of trial by jury. Id. at 1328-29. It determined that the trustee, who requested a jury trial, did not surrender its right to have one in a case only incidentally related to the bankruptcy process. Id. at 1330.
 
 
 50
 The court distinguished Hallahan on the ground that the creditor in Hallahan invoked the claims allowance process by filing a claim for a pre-petition debt. See id. at 1330. Germain's post-petition tortious interference claim against the primary lender, on the other hand, had no relation to the primary lender's proof of claim for a pre-petition debt. Id. at 1328.
 
 
 51
 The court also refused to go as far as Jensen, rejecting the proposition that "either the creditor or the debtor automatically waives all right to a jury trial whenever a proof of claim is filed." Id. at 1330. The court agreed with Jensen only insofar as it found the right to jury to be lost through the conversion of a legal dispute to an equitable one, rather than through waiver. Id. Germain adhered closely to the language in Katchen, 382 U.S. at 336, 86 S.Ct. at 476, holding that denial of a jury trial will occur only where the dispute is "part of the claims-allowance process or affect[s] the hierarchical reordering of creditors' claims." Germain, 988 F.2d at 1330.
 
 
 52
 The waiver theory of Hallahan, rejected by Jensen and Germain, raises as many questions as it answers. The reason a creditor loses its jury right by filing a proof of claim is because its action not only voluntarily submits it to the jurisdiction of the bankruptcy court but also triggers the claims-allowance process, as described in Katchen.[14] A voluntary petition in bankruptcy does not automatically begin the process of allowance and disallowance of claims.[15] Moreover, an involuntary debtor cannot be deemed to have waived its jury rights when its creditors force it into bankruptcy.
 
 
 53
 We do not adopt the specific holding of Jensen that any dispute between a debtor and a creditor who has filed a proof of claim is equitable in nature, for our task is to decide only the case before us. Furthermore, the case at bar is distinguishable on its facts from Germain. Germain determined that although the creditor had filed a proof of claim for a pre-petition debt, the trustee's cause of action for tortious interference arose post-petition and was therefore unrelated to the allowance of the creditor's claim. See 988 F.2d at 1328, 1329-30. This reasoning led to the conclusion that the trustee was entitled to a jury trial. Id. at 1332; but see In re Wheeling-Pittsburgh Steel Corp., 108 B.R. 82, 85 (Bankr.W.D.Pa.1989) (determining that although debtor's counterclaims related to post-petition acts, there was sufficient connection to creditor's claims for pre-petition debts that creditor had no jury right on counterclaims).
 
 
 54
 In the case at bar, the attorneys' claims for fees arose post-petition, as did the debtors' cause of action for malpractice. Moreover, the debtors' malpractice suit mirrors its objections to the allowance of attorney's fees. The court in Germain specifically addressed the situation of a malpractice claim against bankruptcy counsel and stated,
 
 
 55
 [t]o the extent that ... the debtor was essentially objecting to the allowance of the attorney's claim and that the debtor's success meant the disallowance of the attorney's claim, we agree that the debtor's objection was part of the claims-allowance process.
 
 
 56
 988 F.2d at 1330 n. 9.[16] In the case before us, the debtors' objections to attorney's fees rested heavily on their claims of malpractice. The district court recognized the interrelated nature of the actions, finding that "the merits of the malpractice claims must be resolved before there can be a resolution of the fee dispute." Billing, 150 B.R. at 570 n. 2. The close connection between the malpractice action and the objections to fees leads us to conclude that the debtors' allegations of malpractice are part of the process of allowance and disallowance of claims.[17]
 
 
 57
 The fact that the bankruptcy court has explicit jurisdiction to award fees for bankruptcy counsel and other supervisory powers as to bankruptcy counsel strengthens this view.[18] Under the bankruptcy code, the bankruptcy court has the power to award "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses" to bankruptcy counsel. 11 U.S.C. Sec. 330(a)(1), (2).[19] An attorney's claim for pre-petition fees and the debtor's objections and counterclaims based on negligence and breach of contract "[c]learly ... arise[ ] out of the claims allowance process." In re Frost, Inc., 145 B.R. 878, 882 (Bankr.W.D.Mich.1992).
 
 
 58
 We hold that an allegation of legal malpractice raised as a defense to post-petition fees for bankruptcy counsel likewise falls within the process of the allowance and disallowance of claims. The debtors have no Seventh Amendment right to trial by jury, not because of specific waiver of Seventh Amendment rights, but because their claim has been converted from a legal one into an equitable dispute over a share of the estate.[20]
 
 
 59
 Clearly, if the attorneys in this case had demanded a jury trial, their request would be refused on the ground that they had filed a claim for fees with the bankruptcy court. Under the facts, we see no reason to treat the debtors' request differently. Furthermore, the award of attorney's fees to counsel appointed by the bankruptcy court lies at the heart of the court's equitable jurisdiction. Bankruptcy fee claims do not in any way implicate the Seventh Amendment right to jury or any Article III issue. That the defense to the claim is also a common law malpractice claim does not change the relationship of the debtors and their attorneys to the bankruptcy process. Accordingly, we hold that the debtors have no right to a jury trial on the malpractice claims against their bankruptcy counsel, which are asserted as a defense to the attorneys' claim for fees.
 
 IV.
 
 60
 For the foregoing reasons, the judgment of the district court will be reversed and this matter will be remanded to the district court for referral of this malpractice dispute to the bankruptcy court.
 
 
 61
 SLOVITER, Chief Judge, dissenting.
 
 
 62
 I respectfully dissent from the majority's holding that the Billings do not have a Seventh Amendment right to a jury trial in their malpractice action against Ravin, Greenberg, the attorneys who represented their bankruptcy estate. The majority concludes that the Billings are not entitled to a jury trial because this action "falls within the process of the allowance and disallowance of claims," thereby "be[ing] converted from a legal [claim] into an equitable dispute over a share of the estate." Maj. op. at 1253. Although I believe that the majority has done a commendable job in attempting to reconcile its conclusion with the precedent, thereby avoiding many difficult issues unresolved in this court, I do not believe that the analytic building blocks used by the majority support that conclusion.
 
 I.
 
 63
 I base my view that the Billings' action is a legal claim on which they are entitled to a jury trial on the Supreme Court's decision in Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), a case which I believe the majority has inadequately distinguished. In Granfinanciera, the Court held that defendants sued by a bankruptcy trustee who sought to void a fraudulent transfer were entitled to a jury trial under the Seventh Amendment even though the proceeding was a core proceeding.[1]
 
 
 64
 The majority agrees at the outset that the malpractice action filed by the Billings satisfies the first two prongs of the general test set forth in Granfinanciera for determining whether a claim is subject to the right to trial by jury, i.e. whether the action would have been one at law or equity in 18th-century England before the courts of law and equity merged, and whether the remedy sought is a legal one. See id. at 42, 109 S.Ct. at 2790. Patently, the Billings' malpractice action seeking purely monetary relief is a "[s]uit[ ] at common law." U.S. Const. amend. VII; see Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 568, 110 S.Ct. 1339, 1346, 108 L.Ed.2d 519 (1990) (noting that attorney malpractice was historically one at law, citing Russell v. Palmer, 2 Wils. K.B. 325, 95 Eng.Rep. 837 (1767)); see also Whitehead v. Shattuck, 138 U.S. 146, 151, 11 S.Ct. 276, 277, 34 L.Ed. 873 (1891) (suits for damages have an adequate remedy at law and should not be tried at equity); In re Ben Cooper, Inc., 896 F.2d 1394, 1402 (2d Cir.), vacated due to potential jurisdictional defect, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), reinstated, 924 F.2d 36 (2d Cir.), cert. denied, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991) ("Cooper seeks damages from them for alleged negligence and malpractice. It is difficult to imagine a claim that is more inherently legal.... The conclusion that 'in an ordinary tort action ... the right of trial by jury is guaranteed by the Constitution' is so obvious it hardly needs belaboring." (quoting United States v. Fotopulos, 180 F.2d 631, 634 (9th Cir.1950)); In re Jackson, 118 B.R. 243, 249 (E.D.Pa.1990) ("allegations of malpractice ... are the common stuff of a jury claim").
 
 
 65
 Thus, the Billings' malpractice claim would be entitled to a jury trial unless it fell within the third prong of Granfinanciera covering those cases involving "public rights" which Congress can assign for adjudication to a non-jury tribunal. 492 U.S. at 42, 109 S.Ct. at 2790. The majority never holds that the Billings' malpractice action against their bankruptcy attorneys involves "public rights," and one would expect that the absence of such a holding would be determinative because the Court explicitly stated in Granfinanciera that "[u]nless a legal cause of action involves 'public rights,' Congress may not deprive parties litigating over such a right of the Seventh Amendment's guarantee to a jury trial." Id. at 53, 109 S.Ct. at 2796.
 
 
 66
 Nor could the majority hold, consistent with Granfinanciera, that because the Billings were in bankruptcy their malpractice claim became a "public right," particularly in light of the Court's language in that opinion:
 
 
 67
 state-law causes of action for breach of contract or warranty are paradigmatic private rights, even when asserted by an insolvent corporation in the midst of Chapter 11 reorganization proceedings.... There can be little doubt that fraudulent conveyance actions by bankruptcy trustees ... [which] "constitute no part of the proceedings in bankruptcy but concern controversies arising out of it"--are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res. They therefore appear matters of private rather than public right.
 
 
 68
 492 U.S. at 56, 109 S.Ct. at 2798 (emphasis added) (citations omitted).
 
 
 69
 This language dictates that what are to be considered "public rights" are "creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res," in contrast to "state-law contract claims brought by ... bankrupt [individuals] to augment the bankruptcy estate," which are private rights for which the right to a jury trial is preserved. Inasmuch as the Billings' malpractice claim falls within the latter, that should be dispositive of the issue before us.
 
 II.
 
 70
 The majority concedes that the Billings' malpractice claim is a private right but nonetheless argues that there is no right to a jury trial because of a "limitation on the Seventh Amendment right to trial by jury in addition to the public rights doctrine." Maj. op. at 1247. This additional limitation on which the majority relies is that "[t]here is no right to trial by jury where the claims allowance process is implicated, because the Bankruptcy Act 'converts the creditor's legal claim into an equitable claim to a pro rata share of the res.' " Maj. op. at 1247 (quoting Katchen v. Landy, 382 U.S. 323, 336, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966)). The Katchen language is inapplicable because this case does not involve a "creditor's legal claim" and therefore cannot implicate the majority's equitable conversion theory.
 
 
 71
 In dealing with this issue, the majority opinion relies to a great extent on Langenkamp v. Culp, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam), in which the Court found that a creditor who filed a claim against the estate had no right to a jury trial in a resultant preferential transfer action brought by the bankruptcy trustee. However, nothing in Langenkamp detracts from the language quoted above from Granfinanciera about preservation of jury trials for private rights, and until and unless the Court explicitly disapproves it or gives us more guidance, we are bound by the Court's statement that the sort of claim at issue here is one for which the right to a jury trial will be preserved. I believe the most reasonable manner to resolve what may appear to be tension in the language of Katchen, Langenkamp, and Granfinanciera is to regard claims presented by creditors in bankruptcy as claims over "public rights."
 
 
 72
 The paradigmatic "public rights" are the new statutory rights which Congress creates and assigns to an administrative agency, discussed in Atlas Roofing Co., Inc. v. Occupational Safety & Health Review Comm'n, 430 U.S. 442, 450-55, 97 S.Ct. 1261, 1266-69, 51 L.Ed.2d 464 (1977). See also Granfinanciera, 492 U.S. at 51, 109 S.Ct. at 2795. Granfinanciera recognized that the "public rights" concept extends beyond those assigned to an administrative agency. The Federal Government need not be a party for a matter to be a "public right." See id. at 54, 109 S.Ct. at 1268.
 
 
 73
 The Court noted in Granfinanciera, "[o]ur case law makes plain, however, that the class of 'public rights' whose adjudication Congress may assign to administrative agencies or courts of equity sitting without juries is more expansive than Atlas Roofing's discussion suggests." Id. at 53, 109 S.Ct. at 2796. It continued: "[t]he crucial question, in cases not involving the Federal Government, is whether 'Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary.' " Id. at 54, 109 S.Ct. at 2796 (citation omitted).
 
 
 74
 Katchen, one of the cases on which the majority relies, speaks of the "Bankruptcy Act" as "convert[ing] the creditor's legal claim into an equitable claim." 382 U.S. at 336, 86 S.Ct. at 476. There is no question that, by its statutes governing bankruptcy, Congress has compelled creditors with legal claims to present those claims in an equitable forum, i.e. the bankruptcy court. The process of compelled presentation of claims and allowance and disallowance of claims in an equitable forum which requires equal treatment for claimants similarly situated, invalidates preferences, and enables a debtor to start afresh implicates public policies that go beyond the adjudication of private rights. Thus, although the majority eschews denominating the presentation of creditors' claims in bankruptcy as involving "public rights," I believe no other explanation is possible. I recognize that the Granfinanciera Court stopped short of declaring the restructuring of debtor-creditor relations in bankruptcy a "public right," see 492 U.S. at 56 n. 11, 109 S.Ct. at 2798 n. 11, but neither did it say anything inconsistent with that view.
 
 
 75
 More crucial to the issue before us, of course, is what claims are encompassed within the "public rights" in the bankruptcy context. I do not disagree with the majority's view that those claims that have been asserted by creditors are part of the claims-allowance process which is integral to the restructuring of the debtor-creditor relationship, and therefore those claimants can constitutionally be deprived of their jury trial right with respect to those claims.
 
 
 76
 My disagreement with the majority is primarily based on its conclusion that the Billings' malpractice claim fits into that definition. The distinguishing feature between Granfinanciera and Langenkamp was whether the creditors had filed a claim against the estate. In Granfinanciera, they had not. In Langenkamp, they had. As the Court stated in Langenkamp, by filing a claim the creditors were said to have "trigger[ed] the process of 'allowance and disallowance of claims,' " Langenkamp, 498 U.S. at 44, 111 S.Ct. at 331 (quoting Granfinanciera, 492 U.S. at 58, 109 S.Ct. at 2799). In Langenkamp, the issue was whether the creditors, having filed their claim, were entitled to a jury trial when the trustee then sued them to recover allegedly preferential monetary transfers. In holding they were not, Langenkamp explained its interconnection with Granfinanciera by stating that "[i]f the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. [Granfinanciera, 492 U.S. at 58-59, 109 S.Ct. at 2799.] In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction. [Id.] at 57-58, 109 S.Ct. at 2798-99. As such, there is no Seventh Amendment right to a jury trial." Langenkamp, 498 U.S. at 44-45, 111 S.Ct. at 331.
 
 
 77
 Langenkamp made clear, however, that "[i]f a party does not submit a claim against the bankruptcy estate ... the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial." Id. at 45, 111 S.Ct. at 331 (emphasis in original).
 
 
 78
 This is the same analysis as presented in Katchen v. Landy, 382 U.S. 323, 336, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966):
 
 
 79
 although petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity. The Bankruptcy Act, passed pursuant to the power given to Congress by Art. I, Sec. 8, of the Constitution to establish uniform laws on the subject of bankruptcy, converts the creditor's legal claim into an equitable claim to a pro rata share of the res.
 
 
 80
 (citation omitted) (emphasis added).
 
 III.
 
 81
 To recapitulate, only claims that are part of the "process of allowance and disallowance of claims" that is "integral to the restructuring of the debtor-creditor relationship," Langenkamp, 498 U.S. at 44, 111 S.Ct. at 331 (quotations omitted), are "public rights" which need not be tried to a jury. Both Langenkamp and Katchen involved creditors bringing a claim to bankruptcy to adjudicate their pro rata shares of the res. Granfinanciera differed because it more involved a "state-law contract claim[ ] brought by a bankrupt corporation to augment the bankruptcy estate than [it did] creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." Granfinanciera, 492 U.S. at 56, 109 S.Ct. at 2798. The Billings' malpractice action is more analogous to Granfinanciera since it is an effort by the debtor to augment the estate as to a creditor who has not filed a pre-petition claim.
 
 
 82
 The majority analogizes this case to Katchen and Langenkamp because it regards Ravin, Greenberg's request for fees as triggering the claims allowance process. Therefore, the majority regards the Billings' malpractice action as analogous to a resultant preference action filed by a trustee. However in those cases the party who sought the jury trial was the creditor who filed the claim, not the trustee who filed the fraudulent transfer action. Therefore, even if the analogy worked, it would not dictate the result the majority reaches.
 
 
 83
 Because Ravin, Greenberg has not asked for a jury trial, we need not decide in this case whether its fee request is part of the claims allowance process "integral to the restructuring of debtor-creditor relations." I note merely that there are differences between its position and those of creditors because the claims allowance process involves pre-petition creditors' "hierarchically ordered claims to a pro rata share of the bankruptcy res." Granfinanciera, 492 U.S. at 56, 109 S.Ct. at 2798. Unlike pre-petition creditors, attorneys seeking to recover fees as an administrative expense will not be forced to accept only a pro rata percentage of the debt they are owed. Indeed, the plan under which the debtor will restructure is usually fashioned and approved before the attorneys file their application for fees.
 
 
 84
 In any event, the right of a bankruptcy trustee to avoid a preference was specifically provided for by Congress in 11 U.S.C. Sec. 547(b) (1988) and is therefore undeniably part of "the process of allowance and disallowance of claims" in that it secures equality of treatment. In contrast, there is no provision in the Bankruptcy Code for malpractice claims as a tool to assist in a bankruptcy restructuring. While the Billings' malpractice claim, if successful, may affect the total amount of the bankruptcy estate and hence the amount received by the creditors, it is unrelated to the equality of treatment of pre-petition creditors and will not impact on their pro rata percentages of that estate vis-a-vis each other. Thus, it is not "integral to the restructuring of the debtor-creditor relationship." Langenkamp, 498 U.S. at 44, 111 S.Ct. at 331.
 
 
 85
 I believe the majority is mistaken in treating the Billings' malpractice claim as if it was only a defense to Ravin, Greenberg's request for fees. The complaint does more than dispute whether and in what amount the Billings owe Ravin, Greenberg. In addition to the request for "disgorgement of all legal fees received," which might be analogous to a claim asserting fraudulent preference, it also seeks compensatory and punitive damages for, inter alia, negligent misrepresentation, breach of fiduciary duty and breach of contract, which may exceed the fees received. By treating the malpractice claim as part of the Ravin, Greenberg request for fees the majority denies the Billings their fair opportunity to prove before a jury that Ravin, Greenberg owes them damages.
 
 IV.
 
 86
 I turn therefore to the three principal court of appeals' cases referred to by the majority on the issue before us. I agree with the majority's reasoning in rejecting the analysis propounded in dictum in In re Hallahan, 36 F.2d 1496, 1505 (7th Cir.1991), that a debtor waives its jury trial right by filing a petition for bankruptcy. I need not address the waiver argument again except to note that it was also espoused in In re McLaren, 3 F.3d 958, 961-62 (6th Cir.1993).
 
 
 87
 The waiver analysis was also rejected in In re Jensen, 946 F.2d 369, 374 (5th Cir.1991), and the result there is consistent with my analysis. The Jensens, the debtors, sought a jury trial on their claims for damages against non-creditor defendants in state court on pre-petition claims for tortious interference with the Jensens' business relations and conspiracy. The court of appeals found that the debtors maintained their right to a jury trial, holding that their claims were not "integral to the restructuring of debtor-creditor relations" because they were "essentially claims brought by the debtor (in possession) against non-creditor third parties to augment the bankruptcy estate." Id. (quotations omitted).
 
 
 88
 Germain v. Connecticut National Bank, 988 F.2d 1323 (2d Cir.1993), is the case of the three most analogous to the present one. In Germain, the bankruptcy trustee filed suit in state court against a creditor who had filed a proof of claim against the estate. The trustee alleged mostly post-petition misconduct, i.e. threatening to terminate post-petition financing, threatening to force the debtor out of business, and threatening to convert the proceeding from Chapter 11 to Chapter 7. The lawsuit "allege[d] essentially that [the creditor] used its power as the debtor's primary lender to exercise control of the debtor to its detriment." Id. at 1326.
 
 
 89
 In upholding the trustee's right to a jury trial, the court distinguished the claim at issue from the preferential transfer issue raised in Katchen and Langenkamp because the Bankruptcy Code requires the court to resolve any preference issue before a claim may be allowed. Id. at 1327. It followed that a preference action is part of the allowance and disallowance of claims. In contrast, the court reasoned, "suits like the Trustee's action in this case which would augment the estate but which have no effect on the allowance of a creditor's claim simply cannot be part of the claims-allowance process." Id. at 1327. The court concluded that these claims "are not bankruptcy claims and only incidentally implicate provisions of the Bankruptcy Code." Id. at 1329. It continued:
 
 
 90
 A different result might adhere if the action had become part of the claims-allowance process, because determining pro rata distribution is characteristically equitable. An action that bears directly on the allowance of a claim is integrally related to the equitable reordering of debtor-creditor and creditor-creditor relations. If an equitable reordering cannot be accomplished without resolution of what would otherwise be a legal dispute, then that dispute becomes an essential element of the broader equitable controversy.
 
 
 91
 Id. at 1329 (citation omitted).
 
 
 92
 Although the majority seeks to distinguish Germain on the ground that the trustee's cause of action, which related to the creditor's post-petition conduct, was "unrelated to the allowance of the creditor's claim," maj. op. at 1252, whereas it regards the debtors' allegations of malpractice in this case as "part of the process of allowance and disallowance of claims," maj. op. at 1252, I have already explained why I believe it is not.
 
 
 93
 The majority also states that "[t]he court in Germain specifically addressed the situation of a malpractice claim against bankruptcy counsel" and quotes the following from Germain:
 
 
 94
 To the extent that ... the debtor was essentially objecting to the allowance of the attorney's claim and that the debtor's success meant the disallowance of the attorney's claim, we agree that the debtor's objection was part of the claims-allowance process.
 
 
 95
 Maj. op. at 1252 (quoting Germain, 988 F.2d at 1330 n. 9). That Germain footnote is not on point. It was addressing the decision in In re Frost, Inc., 145 B.R. 878, 882 (Bankr.W.D.Mich.1992), which is inapposite here because it involved an attorney's proof of claim for a pre-petition debt, and thus was to be treated like any other pre-petition creditor. The mere happenstance that the pre-petition creditor in Frost was also the attorney who represented the debtor does not make Frost analogous to the current case involving the debtors' attorneys who seek their fees as administrative expenses.
 
 
 96
 The fact remains that in Germain, the appellate case presenting the facts closest to those with which we are faced, a claim asserted by the trustee (here debtor) against a claimant creditor (here an attorney seeking bankruptcy-related fees) because of actions taken post-petition, the court reaffirmed the right to jury trial on that claim. The majority cites no contrary authority. I note an additional case not cited by the majority, In re Jackson, 118 B.R. 243 (E.D.Pa.1990), in which the district court held that the Chapter 7 trustee had a Seventh Amendment right to a jury trial in an adversary proceeding against the attorneys who had represented the estate before the bankruptcy was converted from a Chapter 11 to a Chapter 7 case. The court reasoned,
 
 
 97
 The claim, as described, is one that sounds both in contract and in tort. It characterizes, in a variety of ways, allegations of malpractice that are the common stuff of a jury claim. So coverage by the Seventh Amendment seems clear.
 
 
 98
 Id. at 249.
 
 
 99
 Ultimately, the majority relies on two reasons for its decision to deprive the debtor of its jury trial on its legal malpractice claim. The first is that the facts asserted in that suit mirror those that were asserted by the debtor in opposing Ravin, Greenberg's petition for counsel fees. That is only partially right, since the debtor objected strenuously to the amount of time which Ravin, Greenberg included in its fee application. In any event, the debtor was obliged to the creditors to call to the bankruptcy court's attention reasons why the request for attorney's fees was excessive, thereby preserving for the creditors as much of the estate as possible. There would be no policy reason to penalize a debtor who does so by depriving it of its otherwise available jury trial on its claim for affirmative damages. Moreover, the majority's reasoning runs counter to the principle expressed by the Supreme Court in Ross v. Bernhard, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970), that "legal claims are not magically converted into equitable issues by their presentation to a court of equity," quoted favorably in Granfinanciera, 492 U.S. at 52, 109 S.Ct. at 2796.
 
 
 100
 The other reason given by the majority appears to be one of parity, based on the reasoning that inasmuch as the attorneys would be refused a request for a jury trial on the malpractice action because they filed a claim for fees, there is no reason to treat the debtors' request differently. As I noted above, there is some question whether the attorneys' claim for fees is comparable to a creditor's pre-petition claim, and therefore it is still an open question whether the reasons given to deny a creditor a jury trial on the consequential fraudulent preference action would also apply to attorneys.
 
 
 101
 More compelling is the reasoning by this court in Beard v. Braunstein, 914 F.2d 434, 435-36 (3d Cir.1990), where the bankruptcy trustee filed an adversary proceeding to recover rent. The non-creditor defendant sought a jury trial on his counterclaim seeking, inter alia, damages. After deciding that the rent recovery claim was legal in nature, we examined whether "Congress [could] assign [the] claim to a non-Article III adjudicative body that does not use a jury as a factfinder." Id. at 439. In the course of concluding that the defendant was entitled to a jury trial, we stated that "[the debtor's] action does not merely 'resemble a state-law contract [action] brought by a bankrupt corporation to augment the bankruptcy estate'--it is such an action. Accordingly, it is clearly a matter of private right and we therefore conclude that [defendant] was entitled under the Seventh Amendment to the jury trial he sought on [debtor's] claim for rent." Id. at 441. The majority has not distinguished Beard on any basis that I find persuasive. Surely it could not be on the ground that the claim there was noncore, since this court expressly stated in Beard that the right to a jury trial is not dependent on whether the claim is considered to be core or noncore. See id. at 437.
 
 V.
 
 102
 The Supreme Court has never dealt with the precise issue we have before us now and, as the majority points out, it is a question of first impression for this court. Whenever confronted with a Seventh Amendment right to a jury trial issue, we should be mindful that it is an important constitutional right that should not be taken away lightly:
 
 
 103
 Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.
 
 
 104
 Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 565, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990) (quotations omitted). Because I would find that the Billings have a Seventh Amendment right to a jury trial on their malpractice claim, I would affirm the order of the district court denying Ravin, Greenberg's motion for a referral, dismissal, abstention or stay.[2]
 
 SUR PETITION FOR REHEARING
 May 23, 1994
 
 105
 Before: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, and LEWIS, Circuit Judges, and RESTANI, Court of International Trade Judge*.
 
 
 106
 The petition for rehearing filed by appellees in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 
 
 107
 Chief Judge SLOVITER and Judges MANSMANN, GREENBERG, HUTCHINSON, COWEN and ROTH would have granted rehearing.
 
 
 
 *
 Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation
 
 
 [1]
 The statute provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 ... and may enter appropriate orders and judgments," subject to ordinary appellate review by the district courts. 28 U.S.C. Sec. 157(b)(1) (1988). Core proceedings include "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship." Id. Sec. 157(b)(2)(A), (O) (1988). Post-petition transactions are more likely to be core proceedings. In re Ben Cooper, Inc., 896 F.2d 1394, 1399 (2d Cir.1990), cert. denied, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991); In re Arnold Print Works, Inc., 815 F.2d 165, 168 (1st Cir.1987); cf. Beard v. Braunstein, 914 F.2d 434, 445 (3d Cir.1990) (not relying on Ben Cooper and Arnold Print Works because the case at bar involved pre-petition contracts only). The district court ruled that the debtors' post-petition claim attacking the competency of bankruptcy counsel was a matter concerning the administration of the estate under 28 U.S.C. Sec. 157(b)(2)(A). Billing v. Ravin, Greenberg & Zackin, P.A., 150 B.R. 563, 566 (D.N.J.1993). Therefore, the court held, and the parties do not disagree, that the debtors' malpractice claim constituted a core proceeding. Id. at 567
 
 
 [2]
 Although the Supreme Court has considered the thesis that the restructuring of debtor-creditor relations may be a public right, Marathon, 458 U.S. at 71, 102 S.Ct. at 2871, it has specifically refused to defend such a view. Granfinanciera, 492 U.S. at 55-56 & n. 11, 109 S.Ct. at 2798 & n. 11
 
 
 [3]
 In Granfinanciera, the debtors filed petitions under Chapter 11 of the bankruptcy code and a trustee in bankruptcy was subsequently appointed to represent the estate. 492 U.S. at 36, 109 S.Ct. at 2787. Under Chapter 11 reorganization proceedings, the estate may remain in the hands of the debtor in possession, or a trustee may be appointed in certain enumerated circumstances. 11 U.S.C. Secs. 1101, 1104 (1988). These circumstances include gross mismanagement or fraud by the debtor. Id. Sec. 1104(a)(1). The court will also designate a trustee to oversee the estate if such appointment is in the interest of the creditors. Id. Sec. 1104(a)(2)
 
 
 [4]
 The summary jurisdiction vested in the bankruptcy courts under the 1898 Act consisted of "jurisdiction over controversies involving property in the actual or constructive possession of the court." Marathon, 458 U.S. at 53, 102 S.Ct. at 2862. The bankruptcy courts also had plenary jurisdiction over disputes involving property in the possession of a third person, if the parties consented. Id
 
 
 [5]
 In the Court's view, proceedings to determine the reasonableness of attorney's fees paid prior to and in contemplation of bankruptcy served as another example of disputes within the bankruptcy court's summary jurisdiction. Katchen, 382 U.S. at 332-33, 86 S.Ct. at 474-75
 
 
 [6]
 The majority opinion rejected the dissent's argument that Katchen rested "on an accident of statutory history." Granfinanciera, 492 U.S. at 58, 109 S.Ct. at 2799. The dissent noted that, unlike the modern bankruptcy code, the 1898 Act gave the bankruptcy courts power to disallow a claim on the grounds of preference, but no express summary jurisdiction over actions to recover preferences from third parties. Id. at 72-73, 109 S.Ct. at 2806-07 (White, J., dissenting). The dissent implied that when Congress expanded the bankruptcy courts' jurisdiction to cover preference actions against third parties, it meant for third parties to have no greater Seventh Amendment rights than creditors who had filed a proof of claim. See id
 
 
 [7]
 The Court distinguished this rationale from the notion of waiver "because creditors lack an alternative forum to the bankruptcy court in which to pursue their claims." Granfinanciera, 492 U.S. at 59 n. 14, 109 S.Ct. at 2799 n. 14
 
 
 [8]
 The problem with applying Granfinanciera to the case at bar is that Granfinanciera is not easily reconciled with Katchen and Langenkamp. The dissent attempts to reconcile the cases by describing the latter two as public rights cases. We do not go that far, but note that if actions to recover preferences from pre-petition creditors involve public rights, so must actions to recover for the post-petition malpractice of the debtor's bankruptcy attorney, an appointed officer of the court. Although both types of actions concern the administration of the bankruptcy estate, the case at hand is more integrally related to bankruptcy administration than the simple recovery of a preference
 
 
 [9]
 We interpreted Langenkamp as "expressly hold[ing] that once a defendant in a preference action has submitted a proof of claim, both the claim and the preference action 'become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction.' " Travellers, 982 F.2d at 100 n. 5 (quoting Langenkamp, 498 U.S. at 44, 111 S.Ct. at 331) (emphasis added)
 
 
 [10]
 We explained that under Bankruptcy Rule 7013, it is compulsory for a party sued by the trustee to bring any counterclaims that arose post-petition. Beard, 914 F.2d at 442 n. 13
 
 
 [11]
 The court explained that a debtor will not be discharged from its obligation to pay a debt "for willful and malicious injury by the debtor to another entity." Hallahan, 936 F.2d at 1499 (quoting 11 U.S.C. Sec. 523(a)(6) (1988)). The creditor claimed that the debtor's willful breach of contract and tortious interference with the creditor's business relationships constituted willful and malicious injury. Id
 
 
 [12]
 The debtors in Jensen had filed suit in Texas state court against certain businesses, individuals and banks involved in the development and marketing of the debtors' invention of a high frequency ventilator designed to help premature infants to breathe. 946 F.2d at 370. The complaint alleged breach of fiduciary duty, fraud, tortious interference with business relations and conspiracy. Id
 
 
 [13]
 Subsequent to Germain, the Second Circuit decided In re Orion Pictures Corp., 4 F.3d 1095 (2d Cir.1993), which concerned the bankruptcy court's ruling as to breach of a so-called "key-man" clause in a contract that the court had been asked to assume as part of the estate. Id. at 1097. The Second Circuit's holding depended primarily upon the purpose of a motion to assume, which requires the bankruptcy judge to determine whether assuming the contract would be a good business decision or a bad one. Id. at 1098-99. A ruling on a breach of contract claim would render the use of business judgment unnecessary and was thus inappropriate in the limited context of a motion to assume. Id. at 1099. After reaching this holding, the court stated:
 [o]ur conclusion that the bankruptcy court erred in adjudicating the key-man issue in deciding the Motion to Assume is also informed by the fact that motions to assume always involve contracts, and allowing a bankruptcy court to decide a disputed legal contract issue in the course of deciding a motion to assume could usurp litigants' Seventh Amendment jury-trial rights. Our holding that contract issues may not be decided as part of a motion to assume eliminates the possibility that any such constitutional problems will arise.
 Id. (second and third emphasis added). The court did not engage in an in-depth Seventh Amendment analysis and we find its tentative observations unpersuasive.
 
 
 [14]
 Our discussion of the creditor's right to jury in Travellers, 982 F.2d at 99, collapses the two steps of this analysis. The opinion uses language such as "Travellers has, a fortiori, waived its right to a jury trial and has constructively submitted to the equitable jurisdiction of the bankruptcy court by filing a claim." Id. Regardless of the appropriateness of the waiver theory in the context of a creditors' rights case such as Travellers, it does not fit the debtor's situation here. The fact that the debtor may have voluntarily submitted itself to the bankruptcy court's equitable jurisdiction does not complete the analysis. A court must also ask whether the resolution of the particular dispute at issue is necessarily part of the process of the disallowance and allowance of claims. See Katchen, 382 U.S. at 336, 86 S.Ct. at 476
 
 
 [15]
 In the latter half of part III, the dissenting opinion distinguishes Katchen and Langenkamp on the ground that the party seeking the jury trial was the creditor rather than the trustee. Jensen and Hallahan, however, are not distinguishable on that ground. The dissent states further that because Ravin, Greenberg did not request the jury trial, there is no need to determine whether its claim for fees is integral to the claims allowance process. We believe the dissent underemphasizes the role of the creditor's claim as a trigger of the claims-allowance process with the potential to convert rights of action held by the debtor as well as by the creditor
 
 
 [16]
 See also In re Light Foundry Assocs., 112 B.R. 134, 138 (Bankr.E.D.Pa.1990) ("even prior to Granfinanciera, we had little difficulty in concluding ... that a proceeding involving counterclaims to a proof of claim was equitable in nature ... as an aspect of the bankruptcy claims process"); accord In re Washington Mfg. Co., 128 B.R. 198, 202 (Bankr.M.D.Tenn.1991) ("it is the fact that the Trustee's fraudulent conveyance counterclaim is in reality an objection to the allowance of [the creditor's] secured claims which strips the Trustee of a jury right.")
 
 
 [17]
 The debtors' emphasis on the fact that the malpractice complaint seeks money damages in addition to disallowance of attorney's fees is misplaced. The Supreme Court stated in Granfinanciera that "once a creditor has filed a claim against the estate, the bankruptcy trustee may recover the full amount of any preference received by the creditor-claimant, even if that amount exceeds the amount of the creditor's claim." 492 U.S. at 60 n. 14, 109 S.Ct. at 2800 n. 14. The logic is equally applicable to the situation presented to us here
 
 
 [18]
 The bankruptcy court may deny fees to an attorney if at any time during his representation of the estate he is not a disinterested person. 11 U.S.C. Sec. 328(c) (1988). Initial hiring of the attorney by the trustee is also subject to the bankruptcy court's approval. Id. Sec. 327(a) (1988); Bankruptcy Rule 2014(a). Debtors in possession, like the Billings, are subject to the same rules as regards employment of attorneys. 11 U.S.C. Sec. 1107(a) (1988) (debtors in possession are "subject to any limitations on a trustee serving in a case under this chapter"); Bankruptcy Rule 9001(10) (" 'trustee' includes a debtor in possession in a Chapter 11 case")
 
 
 [19]
 Section 330 clearly contemplates payment for services rendered post-petition. One bankruptcy court has considered the explicit statutory provision preventing unauthorized post-petition transfers as evidence of Congress' intent to deny trial by jury on such claims. In re North Carolina Hosp. Ass'n Trust Fund, 112 B.R. 759, 762 (Bankr.E.D.N.C.1990) (citing 11 U.S.C. Sec. 549 (1988)). The court stated, "actions to recover postpetition transfers from the bankruptcy estate arise out of actions occurring after the creation of the estate which are in violation of the equitable protections of bankruptcy law designed to preserve estate assets." Id. The court denied creditors who had not filed claims the right to a jury trial with respect to alleged post-petition transfers because it found a public right to be implicated. Id. at 760, 763. While we do not choose to find that a public right is implicated in awards of post-petition fees for bankruptcy counsel, we do note that such awards are within the bankruptcy court's equity jurisdiction
 
 
 [20]
 Other district courts and bankruptcy courts have also preferred the conversion theory to the waiver theory in the context of the debtor's right to trial by jury. The United States District Court for the Middle District of Tennessee stated that the loss of a jury right
 is not based on any waiver of Seventh Amendment rights by the creditor, but is based on the idea that once the creditor makes a claim against the bankruptcy estate, any subsequent fraudulent conveyance or preference counterclaim by the trustee is equivalent to an objection to the creditor's claim, and therefore part of the claims allowance process.
 In re Washington Mfg. Co., 133 B.R. 113, 117 (M.D.Tenn.1991) (citing Granfinanciera, 492 U.S. at 59 n. 14, 109 S.Ct. at 2799 n. 14). Significantly, the court found that because the creditor had already filed a proof of claim, the trustee had no right to a jury trial on its fraudulent conveyance and preference counterclaims. Id.
 The bankruptcy court in Frost, 145 B.R. 878, held that a debtor does not waive all right to a jury trial by filing a voluntary petition. Id. at 882. A creditor also does not possess the power to waive the debtor's jury rights by filing a proof of claim. Id. at 883. Instead, "[s]ince the adversary proceeding brought by the Debtor implicated the claims allowance process no Seventh Amendment right to a jury trial exists." Id. at 882-83.
 
 
 [1]
 Because the parties have conceded that the Billings' malpractice claim is core, I have assumed so arguendo. A different conclusion might be reached were that analyzed more closely
 
 
 [2]
 The majority has avoided deciding whether the bankruptcy court may conduct a jury trial. In light of the posture of this case, I withhold my views on that issue
 
 
 *
 Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation